UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PERSEVERANZA DI NAVIGAZIONE S.P.A.

Petitioner/Plaintiff,

-against-

NORTH CHINA SHIPPING LTD, NORTH CHINA SHIPPING HOLDINGS COMPANY LIMITED, HEBEI OCEAN SHIPPING COMPANY LIMITED, MAYFAIR HONG KONG LIMITED

Respondants/Defendants.

No. 14 Civ. 403 (RJS)

AFFIRMATION OF JAMES H. POWER IN SUPPORT OF MOTION TO REMAND

James H. Power, being duly sworn, affirms as follows:

1. I am a member of the firm Holland & Knight LLP, attorneys for petitioner/plaintiff Perseveranza di Navigazione S.p.A. ("Plaintiff" or "Perseveranza") in this matter, and I am duly admitted to practice before the United States District Court for the Southern District of New York.

2. I make this affirmation based upon personal knowledge and based upon the documents I have reviewed, in support of Perseveranza's motion to remand this action to state court.

3. This action should be remanded because Respondents' removal constitutes unabashed judge-shopping and a delay tactic to avoid a state court order granting expedited discovery, avoid the issuance of order granting substitute service on counsel in connection with a

fully briefed motion and an attempt to undue a ruling from the state court setting a bond after a full hearing.

4. Respondents, and particularly Hebei Ocean Shipping Company Limited ("**HOSCO**"), the removing party here, manifested an intent to litigate the merits of Petitioner's application for a TRO and Order of Attachment in state court and thereby waived its right to remove the action.

5. Notwithstanding that removal is theoretically available until "trial," it is well established that the purpose of the "prompt removal" rules is to preclude "tactical removal after a defendant sees the case going sour in state court."

6. Here, rather than seeking a prompt removal of the action (even assuming removal requirements can be met here) HOSCO sought relief in the form of numerous extensions, sought relief in the form of a bond, filed opposing motions and affirmations and sought and participated in numerous hearings before state court Judge Ramos in respect of the principal relief sought - attachment -- and further obtained affirmative relief and a delay of the issuance of an attachment order in exchange for submitting to expedited discovery. This discovery included the included the imminent deposition of HOSCO affiant Harry Du.

7. Moreover, the concept that a case may be removed until trial must of course be viewed through the lens of the limited relief -- attachment -- sought by Perserveranza in state court. There is "trial" in connection with an arbitration attachment request beyond the attachment order hearings that are already in progress. Hence the "trial" of this limited dispute

has already begun.[1] Unlike plenary actions on the merits, the primary purpose and *sine qua non* of this petition for security in aid of arbitration pursuant to Civil Practice Law and Rules ("**CPLR**") 7502(c) is to obtain a temporary restraining order and/or order of attachment with respect to respondent HOSCO and the other respondents, including North China Shipping Ltd. ("**NCS**") and North China Shipping Holdings Co. ("**NCS Holdings**") that are parties to ongoing arbitration in London.

8. As such, the determination of whether a temporary restraining order, followed by an attachment order should issue, is the principal question to be decided by the state court. HOSCO is the party that filed the notice of removal to this Court without the consent of defendant NCS against whom an attachment order has issued in the amount of $15,722,210.11.

9. However, prior to filing its removal notice, (i) the parties, including HOSCO, fully briefed the attachment request and a request to vacate the temporary restraining order ("**TRO**"), (ii) upon full briefing, including the submission of affidavits, the state court continued a TRO in place against HOSCO and the other Respondents and ordered expedited discovery, (iii) Plaintiffs served the expedited discovery requests and responses were due, and (iv) HOSCO's filed its removal notice on the eve of a decision with respect to Plaintiff's motion for substitute service so as to permit Plaintiff to serve HOSCO's counsel with the re-issued temporary restraining order.

---

[1] Mayfair Hong Kong is both (i) a garnishee in this action, insofar as banking records prove the arbitration respondents' money was sent through or to Mayfair, and (ii) an alter ego defendant. As to (i) there is no "trial" or hearing beyond "attachment" at issue. The "alter-ego" status of Mayfair will be litigated in a judicial venue outside the arbitrations.

10. It also important to note that this state court action, and the original TRO have been in place since December 11, 2013. Since December 19, 2013, Respondents have been litigating these issues in front of Judge Ramos in state court.

11. At no time since December 19, 2013 have Respondents furnished any evidence to undermine Plaintiff's contentions as to the propriety of a security order or the nearly $1 billion in apparently illicit, co-mingled transfers as between respondents and respondents' counterparties.

12. Then, and only then, does HOSCO file its removal motion - ***after*** additional telephonic and live hearings, including requests for extensions and a plenary hearing at which the court agreed to hold off issuing the requested attachment order pending expedited discovery, and stated as follows[2]:

> "You tell me when you're ready for the hearing, as long as the petitioner has had whatever depositions he wants, we'll go forward." Pg. 50.
>
> "Get there [sic] done on an expedited basis. I want to conduct this hearing early in February." Pg. 53.
>
> "...we need to know that we have had some depositions with regard to the allegations that support proper service. And maybe getting into some of the details of these transactions. And I'm telling the respondents now, your clients will have to cooperate in that discovery. The courts of New York State have stated very clearly that in situations like this, you can't just take the position that I'm not showing up because I wasn't served properly." Pg. 56.

---

[2] *See January 14 Hearing Transcript,* Defined Below

13. Moreover, the undersigned respectfully submits this Court's subject matter jurisdiction is subject to legitimate doubt, which is why Plaintiff re-filed its action in state-court in the first place.

## TIMELINE OF THE STATE COURT LITIGATION

1. On December 11, 2013, Plaintiff filed its Petition for Attachment in Aid of Arbitration and Related Relief in New York Supreme Court ("**Petition**"). *See* D.E.1, Exhs 1-12 for the voluminous litigation papers in this case, including the Petition.

2. On December 13, 2013, an Order to Show Cause and TRO were issued by Judge Ramos ("**First Order to Show Cause and TRO**").

3. On December 19, 2013, a hearing was held before Judge Ramos as to whether the requested attachment order should issue and/or whether the TRO should be extended. ("**December 19 Hearing**"). Respondents Mayfair and HOSCO appeared at that hearing and requested that the TRO be vacated and that no attachment order issue because the requirements had not been met. The TRO was extended at the hearing, and Respondents were provided until January 3, 2014 to file responsive papers, with a hearing to occur January 8, 2013. A true and correct copy of the December 19 Hearing Transcript is attached hereto as Exhibit 1.

4. On January 2, 2014, a conference call with the Court took place at which Respondents HOSCO and Mayfair requested an extension to file their opposition papers. The requested extension was granted and the TRO was extended.

5. On January 10, 2014, Mayfair and HOSCO filed their lengthy and extensive opposition papers. *See* D.E.1, Exhs 1-12 for the voluminous litigation papers in this case.

6. A hearing on the relief sought by Plaintiff was then held on January 15, 2014 ("**January 15 Hearing**"). At the hearing, Judge Ramos largely rejected Respondents' technical arguments, stated that Plaintiff had met its pleading requirement and focused on whether HOSCO was subject to personal jurisdiction and whether Plaintiff had demonstrated a probability of success as to whether Mayfair was the alter-ego of Respondents. Judge Ramos ordered expedited discovery on these two issues, and further extended the TRO. A true and correct copy of the January 15 Hearing Transcript is attached hereto as Exhibit 2.

7. On January 17, 2014, Plaintiff filed a motion for substitute service with respect to Respondent HOSCO ("**Substitute Service Motion**"). A true and correct copy of the Substitute Service Motion is attached hereto as Exhibit 3.

8. HOSCO's opposition to the substitute service motion was due January 22, 2014, with a hearing scheduled for January 24, 2014, 9:30AM.

9. On January 20-21, 2014, Plaintiff issued discovery notices, including requests for documents and depositions ("**Discovery Requests**"). In line with the expedited nature of the discovery, the documents had to be produced by January 31, 2014, with the depositions to be conducted in the first two weeks of February, 2014. True and correct copies of the Discovery Requests are attached hereto as Exhibit 4.

10. On January 21, 2014, HOSCO represents via email that it will not produce its witness for deposition or produce documents despite the court ordered discovery ("**Production**

**Refusal Email"**). A true and correct copy of the Production Refusal Email is attached hereto as Exhibit 5.

11. On January 22, 2013, HOSCO filed its opposition to the Substitute Service Motion ("**Substitute Service Opposition**"). A true and correct copy of the Substitute Service Opposition is attached hereto as Exhibit 6.

12. The next day, HOSCO filed its notice of removal to this Court.

13. The timing is not a coincidence. The principal issues for the State Court to decide are (i) whether Plaintiff can demonstrate a probability of success on the merits; (ii) whether it is likely that the award will be rendered ineffectual absent an attachment; and (iii) whether there is personal jurisdiction over HOSCO.

14. All of these questions were to be the subject of expedited discovery and a third hearing right before HOSCO's tactical removal of this action.

## QUESTIONABLE SUBJECT MATTER JURISDICTION

15. On or about November 25, 2013, Plaintiff filed a highly similar action with this court, case number 13-cv-8396 (the "**Federal Action**").

16. Subsequent to the filing of Federal Action, this Court requested additional information concerning the particulars of the claim, the factual predicates for the alter-ego allegations, and, most importantly, an explanation as to why this court had subject matter jurisdiction.

7

17. Plaintiff dutifully provided all of the information requested, however, while researching the basis for subject matter jurisdiction, the undersigned became concerned regarding the existence of potential arguments that this Court does not have subject matter jurisdiction. Namely, that the underlying dispute involves the following elements:

   a. the breach of settlement agreement and guarantee of a settlement agreement in connection with a charter party dispute, and these traditionally fall outside the Court's admiralty jurisdiction;

   b. the breach of a guarantee of a charter party, for which guarantee there is room for reasonable argument as to whether the guarantee is a performance guarantee (a maritime contract) or a financial guarantee (not a maritime contract); and

   c. substantial doubt and a complete lack of case law concerning whether subject matter jurisdiction under the New York Convention and Federal Arbitration Act exists for when both parties are foreign entities and the remedy sought in court is a pure creature of state law ("Provisional Relief in Aid of Arbitration" pursuant to CPLR 7502(c)).

18. The undersigned communicated such concern about the potential lack of subject matter jurisdiction and the consequence of arriving at that conclusion months into the litigation and informed the Court that it would be voluntarily filing in state court where the same relief was available under CPLR 7502(c) and subject matter jurisdiction would not be an issue.

19. By contrast, there is no doubt that the New York state court has jurisdiction to entertain this proceeding.

20. Plaintiff and the undersigned are and were cognizant that if an attachment order is issued, Plaintiff may be liable for damages, even if the attachment order is vacated in the context of a dismissal for lack of subject matter jurisdiction. This is another reason why Plaintiff sought to file in New York State Court to avoid the increased risk and unnecessary risk of having to pay damages for an attachment if such attachment if later dismissed for lack of subject matter jurisdiction which can be raised at any time by any party, or by the Court.

21. Proceeding in this matter, which requires international parties to produce witnesses and document and obey court orders directing Respondents to "hold" or "freeze" their own assets on pain of contempt of court respectfully requires absolute certainty regarding that court's jurisdiction. Plaintiff should similarly not be forced to seek an attachment where damages result from dismissal where subject matter jurisdiction is questionable.

22. For that reason, the undersigned and Plaintiff determined it would be best to file in State Court, and also for that reason, HOSCO's request to remove to this Court should be denied.

Dated: New York, New York
February 21, 2014

        HOLLAND & KNIGHT LLP

By:    */s/ James H. Power*
        James H. Power
        Warren E. Gluck
        HOLLAND & KNIGHT LLP
        31 West 52nd Street
        New York, New York 10019
        Telephone: (212) 513-3494
        Fax: (212) 385-9010
        Email: james.power@hklaw.com
               warren.gluck@hklaw.com

*Attorneys for Plaintiff Perseveranza di Navigazione SpA*